

**SO ORDERED.**

**SIGNED this 31 day of August, 2006.**

_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:  )
 )
KURT JAMES BOLZE and )
JENNIFER GAIL BLASSINGAME, ) Case No. 06-40036
 )
Debtors. )
_____)

### MEMORANDUM OPINION AND ORDER
### SUSTAINING OBJECTION TO CONFIRMATION

This matter is before the Court on Creditor Kansas Super Chief Credit Union's Objection to Debtor's Chapter 13 Plan.[1]  The parties have submitted stipulations of facts and briefs on this matter, and the Court is now ready to rule. This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

**I.  FINDINGS OF FACT**

---

[1] Doc. 13.

The parties have stipulated to certain facts, which this Court adopts.[2] On August 27, 2004, Debtor, Kurt Bolze, borrowed $14,495.36 from the Kansas Super Chief Credit Union ("KSCCU") to purchase a 2001 Mazda MPV, and KSCCU properly perfected its purchase money security interest in this vehicle. Debtor, Jennifer Gail Blassingame, who is the common law wife of Kurt Bolze, was not a party to the transaction with KSCCU, although her name was added to the title when the vehicle was registered with the Kansas Department of Motor Vehicles.

The Mazda is the only vehicle that is large enough to accommodate the Debtors' entire family, so it is always the vehicle used when both Debtors and all their children need to go somewhere as a family. When that occurs, sometimes Mr. Bolze drives and sometimes Ms. Blassingame drives, while the other rides along with their four children. In fact, the Mazda was specifically acquired for the purpose of transporting the entire family in one car when the Debtors' fourth child was born. Mr. Bolze does not use the Mazda unless it is in connection with his family's travel. He uses another car to go to and from work, and for other purely personal matters.

On January 31, 2006, Debtors filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code. In their Chapter 13 plan, they proposed to cram down KSCCU's claim that is secured by the Mazda by only paying KSCCU $7,600, the purported value of the Mazda as of the date of filing, as a secured claim and treating the remainder of KSCCU's claim as a general unsecured claim.[3] KSCCU objected to this treatment, claiming that amendments made to

---

[2]Docs. 32 and 49.

[3]Debtors have now since stipulated that the average retail value of this vehicle (with100,000 miles) is $11,450; whereas this vehicle only has 90,000 miles. KSCCU's Proof of Claim indicates $12,187 was owed as of the date of filing.

Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") of 2005 prevents the Debtors from cramming down its secured claim.[4]

## II. CONCLUSIONS OF LAW

As this Court previously discussed in *In re Vega*,[5] 11 U.S.C. § 1325 establishes confirmation requirements for Chapter 13 plans. Section 1325(a)(5) mandates that Chapter 13 plans must provide one of three alternative treatments to secured creditors. First, a plan can provide the secured creditor with whatever treatment the secured creditor has agreed to accept.[6] Clearly, KSCCU has not agreed to accept the treatment being provided it in the instant plan, so this alternative is not available to Debtors. Second, a plan can provide for the surrender of the collateral to the secured creditor.[7] Debtors' plan does not surrender the Mazda. The only other remaining option for Debtors, therefore, is that their plan must provide for them to retain the collateral while simultaneously providing KSCCU with a stream of payments equal to the amount of its allowed secured claim.[8]

---

[4]This case was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) became effective. All future statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101 - 1532 (2005), unless otherwise specifically noted. Any reference to the Bankruptcy Code as it existed prior to the 2005 amendments will be referred to as 11 U.S.C. § ___ (2004) or to "Pre-BAPCPA § ___."

[5]344 B.R. 616 (Bankr. D. Kan. 2006).

[6]Section 1325(a)(5)(A).

[7]Section 1325(a)(5)(C). Prior to the adoption of BAPCPA, the creditor would then sell the collateral. The net amount received was then subtracted from the debt and the difference allowed as an unsecured claim. Typically in this District, in the vast majority of plans, unsecured claims are ultimately discharged, once the plan is completed, without any payment.

[8]Section 1325(a)(5)(B)(ii).

3

Along with this third option, the plan must provide: a) that the secured creditor retain its lien until the earlier of the payment of the underlying debt pursuant to non-bankruptcy law or the issuance of a discharge; b) that the secured creditor retain its lien to the extent recognized by non-bankruptcy law if the case is dismissed or converted without completion of the plan;[9] and c) that the value as of the effective date of the plan of property to be distributed under the plan on account of the secured claim is not less than the allowed amount of such claim.[10] This section mandates that the secured creditor receive the present value of its claim as of the petition date. The Supreme Court has, pre-BAPCPA, interpreted this section to require the payment of interest on the secured claim at a rate determined by an adjustment from the prime rate based on the risk of nonpayment.[11]

The last requirement is that if the plan provides for periodic payments, such payments must be in equal monthly amounts and must be in an amount sufficient to provide adequate protection to the secured creditor.[12] This third requirement is designed to protect the secured creditor from any decrease in the value of its collateral during the life of the Chapter 13 plan.[13]

The BAPCPA opted to differentiate between the treatment required for creditors who loaned money for a debtor to purchase a motor vehicle, for the debtor's personal use, within 910 days preceding the filing date, and other creditors. It did so by inserting an unnumbered paragraph at the

---

[9] Section 1325(a)(5)(B)(i)(1).

[10] Section 1325(a)(5)(B)(ii).

[11] *Till v. SCS Credit Corp.*, 541 U.S. 465, 484-85 (2004).

[12] Section 325(a)(5)(B)(iii).

[13] *In re Fleming,* 339 B.R. 716, 720 (Bankr. E.D. Mo. 2006) (outlining requirements for confirmation, post-BAPCPA, and ultimately holding that anti-cramdown provision of BAPCPA does not require payment of interest at contract rate, but instead at *Till* rate).

4

Case 06-40036   Doc# 53   Filed 08/31/06   Page 4 of 10

end of § 1325(a)(9), which appears related to § 1325(a)(5). The hanging paragraph states, in pertinent part, as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in Section 30102 of title 49) acquired for the personal use of the debtor...."

The applicable subsection of § 506 is, of course, § 506(a)(1), which provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...."

Accordingly, the language contained within the hanging paragraph makes the value of the collateral irrelevant in determining the allowed amount of a claim secured by a purchase money security interest in a vehicle acquired within 910 days of the bankruptcy filing for the personal use of the debtor. And unless the amount of the claim is subject to reduction for reasons other than collateral value, the creditor's allowed secured claim is fixed at the amount of the underlying debt under nonbankruptcy law.[14]

Under the stipulated facts, if the Court finds that Debtor acquired the car for personal use, then KSCCU is entitled to be paid the full amount of its claim at the ongoing *Till* rate typically

---

[14]*In re Ezell*, 338 B.R. 330, 340 (Bankr. E.D. Tenn. 2006), *In re Osborn*, __ B.R. __ 2006 WL 2457933 (Bankr. W. D. Mo. 2006), *In re Payne*, __ B.R. __, 2006 WL 2289371 (Bankr. S.D. Ohio 2006) and *In re Sparks*, __ B.R. __, 2006 WL 2243076 (Bankr. S. D. Ohio 2006) (generally holding that if debtor elects to surrender vehicle obtained within 910 days of filing bankruptcy, surrender is deemed to fully satisfy creditor's claim because anti-cramdown provision works both ways, and thus creditor retains no deficiency to assert as an unsecured claim). *See also In re Vega*, 344 B.R. at 622-23 (where this Court held the secured claim had to be reduced to equal the purchase money portion of the note remaining due on collateral acquired within 910 days of the filing).

5

used.[15] If the hanging paragraph does not apply, KSCCU will be treated exactly as it would have been pre-BAPCPA. In that instance, KSCCU will be entitled to a secured claim in the stipulated amount of the value of the collateral ($11,450) and will be entitled to be paid interest on that amount at the ongoing *Till* rate typically used. It will also be allowed an unsecured claim for the balance of the debt it is owed.

The Plaintiff's argument that this debt does not fall under the provisions of the hanging paragraph in § 1325 is summarized as follows in Debtors' brief:

> The fact that Congress did not conjoin "personal" with "family and household" in the hanging paragraph, but did do so in numerous other provisions of the Code, clearly indicates that it intended to exclude security interests in cars purchased for family and household use within the last 910 days, from the non-bifurcation provisions of the "hanging paragraph." A car "acquired for the personal use of the Debtor" would be the vintage corvette only driven around the park on Sunday, or the 1958 Chevy convertible driven in the local 4th of July parade; not the Mazda used to take the kids to school and the Doctor, or load up with groceries or sweat socks. It makes no sense that Congress would intend that these entirely different "motor vehicles" be given the same treatment.

In other words, Debtors' position is that if an automobile is used for "household" or "family" use, it cannot, by definition, also be used for "personal" use – essentially arguing that those terms are mutually exclusive. The Court disagrees.

In *Lowder,* this Court addressed the meaning of the term "personal use" as it applies to the hanging paragraph in § 1325. The Court held:

---

[15]The parties have not raised the issue of whether Debtors will be required to pay interest on KSCCU's claim if the hanging paragraph in § 1325 is applicable in this case. However, that issue has been previously decided by this court in *In re Lowder,* 2006 WL 1794737 at *6 (Bankr. D. Kan. June 28, 2006). That decision finds that *Till* applies in 910 car loan situations. That issue is on direct appeal to the Tenth Circuit Court of Appeals, arising out of a case decided by Judge Berger in the Kansas City Division. *See In re Wampler*, 345 B.R. 730 (Bankr. D. Kan. 2006).

6

> The Court finds the approach taken by the *Runski* court persuasive in deciding how this Court should interpret the term "personal use" in § 1325(a).[16] When a debtor can establish that a vehicle has been acquired for business purposes, the hanging paragraph in § 1325(a) will not apply. That debtor will be able to bifurcate the claim into a secured and unsecured portion and pay only the value of the vehicle, with interest. Conversely, when the evidence shows that a vehicle was acquired for non-business, or the "personal," use of the debtor, bifurcation is impermissible.[17]

Applying the holding from *Lowder* to this case, it is clear that the automobile in question was purchased for the personal use of the Debtors. Debtor Bolze may have purchased the automobile for his wife to primarily drive, but he has stipulated that he personally uses the car for his own transportation when the family all travels together, and that the car was acquired for that purpose. Further, Debtors have not argued that this automobile was purchased for business purposes, and nothing in the record would so indicate. Based upon the Court's prior holding in *Lowder*, the Court finds that this car was purchased for personal use, rather than business use, and therefore is subject to the provisions of the hanging paragraph in § 1325(a).

---

[16]The Court has found only two other decisions dealing with the definition of "personal use" in the context of a 910 car loan. In *In re Jackson*, 338 B.R. 923 (Bankr. M.D. Ga. 2006), the debtor contended that a car acquired for his non-debtor wife's use within 910 days of the date he filed for bankruptcy was not subject to the hanging paragraph because it was not purchased for the "personal use of the debtor." The court defined "personal" as "'[o]f or relating to a particular person; private.'" *Id.* at 926 (quoting American Heritage Dictionary of the English Language (4th ed. 2000)). Using this definition, the court held that "the vehicle must have been acquired for the use of a particular person-Debtor-for the hanging paragraph to apply." *Id.* The approach taken by this Court is not inconsistent with the one taken by the *Jackson* court, but rather expands on that definition by holding that the vehicle must also be used for non-business purposes to qualify as "personal use." The other decision is *In re Lewis*, __ B.R. __ 2006 WL 2372162 (Bankr. D. Kan. 2006), where debtors acquired a car within 910 days of their bankruptcy, but the car was for the sole use of a non-filing adult daughter who could not get credit in her own name. Judge Somers held that this vehicle did not constitute a vehicle acquired for the personal use of the debtor.

[17]*In re Lowder,* 2006 WL 1794737 at *4.

7

The Court also disagrees with the Debtors' position that the terms "personal use," "household use" and "family use" are mutually exclusive, and, by excluding the terms "household use" and "family use" from the hanging paragraph, Congress intended the term "personal use," to have an extremely narrow scope. The Fourth Circuit Court of Appeals discussed the overlap between property that is for personal, household, and family use as follows:

> The terms "personal," "family," and "household" describe three different categories of goods, and although these categories undoubtedly overlap to some extent - for example, a television set may be used by the debtor personally and by family members - there are some items of personal property, such as clothing, that only the debtor typically would use.

The recognition that personal use can, and very often does, overlap with household and family use in relation to any piece of property, refutes the Debtors' position that an automobile that is used for family or household purposes cannot be an automobile "acquired for the personal use of the debtor."

Even if the Court were to stray from its holding in *Lowder,* that an automobile that is purchased for non-business related activity is for the personal use of a debtor, the Debtors' position that "[a] car 'acquired for the personal use of the Debtor would be the vintage corvette only driven around the park on Sunday, or the 1958 Chevy convertible driven in the local 4th of July parade; not the Mazda used to take the kids to school and the Doctor, or load up with groceries or sweat socks" would not be adopted. The hanging paragraph in § 1325(a) does not require that an automobile be used exclusively for personal use, and personal use is not mutually exclusive of household and family use. An automobile can, and usually will, be used for personal, household and family use in most situations. That does not remove it from the confines of the hanging paragraph. Nothing

8

in the hanging paragraph requires the personal use to be the exclusive use of the property, or indicates that the paragraph is inapplicable if the automobile has more than one use.[18]

**III. CONCLUSION**

The Court finds that KSCCU's objection to the Debtors' Chapter 13 plan should be sustained. The automobile in question was acquired for the personal use of the Debtors within 910 days of the filing of their Chapter 13 bankruptcy petition, and KSCCU has a properly perfected purchase money security interest in it. Therefore, Debtors must provide for full payment of KSCCU's claim in their Chapter 13 plan, with *Till* interest, rather than bifurcating the claim into a secured and unsecured portion based upon the value of the automobile.

**IT IS, THEREFORE, BY THE COURT ORDERED** that Kansas Super Chief Credit Union's Objection to Debtors' Chapter 13 Plan (Doc. 13), is sustained.

**IT IS FURTHER ORDERED** that if Debtors wish to remain in this Chapter 13 proceeding, they must submit an amended Chapter 13 Plan within 21 days. That amended plan must comply with the requirements of 11 U.S.C. § 1325(a) and this order. In addition, Debtors shall also within that same time period file Amended Schedules I & J if they contend that they can make the plan payments that would be required as a result of this order. The present schedules do not reflect that Debtors have the financial ability to pay an additional $4,587, plus interest, to Kansas Super Chief Credit Union over the life of the plan. Failure to file and provide notice of such a plan and amended schedules by that date may constitute unreasonable delay, and the Court will entertain a Motion to

---

[18]As the Court mentioned in *Lowder*, there may be situations where the personal use of an automobile is so de minimis that it will not bring the automobile within the confines of the hanging paragraph, or, like in *In re Lewis*, __ B.R. __ 2006 WL 2372162 (Bankr. D. Kan. 2006), where debtors acquired a car within 910 days of their bankruptcy, but the car was for the sole use of an adult daughter who could not get credit in her own name.

Dismiss under 11 U.S.C. § 1307(c)(1) if such amendment is not timely filed. The case will next be heard on the **September 27, 2006 docket, at 1:30 p.m.**

###